IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:23-CV-00407-KDB-SCR

| | |
|---|---|
| LATONYA PATTERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| WELLS FARGO & COMPANY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND RECOMMENDATION**

**THIS MATTER** is before the Court on the "Defendant's Motion to Dismiss" (Doc. No. 12) and the parties' associated briefs and exhibits. (Doc. Nos. 13, 13-1, 15 & 16).

The Motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and is ripe for consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendant's Motion to Dismiss be granted as discussed below.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff brings an action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. alleging employment discrimination on the basis of race and retaliation. (Am. Compl., Doc. No. 10 ¶ 13). Accepting the facts alleged in the Amended Complaint as true for the purposes of evaluating this Motion to Dismiss, Plaintiff Latonya Patterson's employment on or around March 10, 2008, with Defendant Wells Fargo & Company ("Wells Fargo") as a

Customer Service Collection Rep. Id. ¶¶ 5, 13. Plaintiff was promoted in 2010 from Underwriter I to Underwriter III. Id. ¶ 16. Sometime between 2010 and 2013, Plaintiff alleges her manager's supervisor reached out and advised her management team to terminate Plaintiff. Id. ¶¶ 16-19. Plaintiff states she is a "Black female," id. ¶ 4, and ascribes racial animus towards Plaintiff as the motivation behind this proposed termination action. Id. It does not appear Plaintiff was actually terminated between 2010 and 2013, and Plaintiff offers no other factual support for this allegation. Plaintiff was later promoted to Lending Officer Assistant Vice President in 2013. Id. ¶ 19. That year, Plaintiff alleges that the same supervisor fired Plaintiff's new manager and moved all her subordinates to a team under a new manager. Id.

In 2019, Plaintiff applied for the Testing Tools and Validation position. Id. ¶ 21. During the interview for the position, the interviewer "belittled and talked down to the Plaintiff and stated he did not understand how she got the interview as Plaintiff did not have the skills or what he was looking for in an applicant." Id. ¶ 22. Plaintiff reported this interaction. Id. ¶¶ 23-24. Ultimately, Plaintiff was not selected for the position in favor of a "white male" that she asserts was "not familiar with the tasks and had no prior experience." Id. ¶¶ 24, 26. In or around November of 2021, Plaintiff applied for a Lending Manager position, but alleges she was not selected again in favor of a "white male" who she asserts "did not meet the minimum qualifications for the position." Id. ¶ 27.

Plaintiff applied for various internal positions between April 2022 and October 2022, but received no screener interviews for these positions. Id. ¶¶ 28-29. Plaintiff avers that her lack of screen interviews with Defendant was "in retaliation for" her "various complaints about discrimination, failure to investigate, and failure to promote, through Wells Fargo Loudspeaker and to the internal investigator Anita Ortega." Id. ¶¶ 30-31. Plaintiff claims these complaints were

never properly investigated or addressed. Id. ¶ 32. Plaintiff further asserts that she performed satisfactorily throughout her tenure working for Defendant. Id. ¶ 14. Plaintiff states she was "more qualified in comparison to the white employees who were promoted" but does not elaborate on her qualifications or the listed qualifications of the "hundreds" of positions for which she applied. Id. ¶¶ 21, 23, 27, 28, 54. Plaintiff asserts that because of her complaints, "she was retaliated against by her manager . . . by giving her required assessments to be completed within 48 hours where her white peers were given two (2) weeks to complete the assessments." Id. ¶ 32. When Plaintiff was unable to complete the assessments in a timely matter she was "disciplined with coaching by management which further impacted her ability to be promoted." Id. ¶ 33. Plaintiff does not specify when this particular allegation took place, but she believes the events occurred as a consequence to the various complaints she made during her tenure with Defendant. Id. at ¶¶ 30-33.

Plaintiff's manager assigned a "white male" and a "white female" to complete Plaintiff's quality reviews, while her colleagues had their quality reviewers randomly assigned. Id. ¶¶ 35-38. Plaintiff started receiving failed reviews. Id. ¶¶ 37-38. Plaintiff contends that her "work was more strictly scrutinized as part of Defendant's retaliation." Id. ¶ 36. Plaintiff states that she was intentionally given incorrect training and guidance on multiple occasions. Id. ¶¶ 39-41. Plaintiff indicates Defendant failed to investigate this issue while subjecting Plaintiff to additional remedial training further impacting Plaintiff's ability to be promoted. Id. ¶ 42.

Plaintiff alleges that she "was retaliated against" and was told "'she better tread lightly' and choose her next steps carefully after complaining about discriminatory and disparate treatment." Id. ¶ 45. Plaintiff contends that she was "verbally abused and retaliated against in such a manner that is caused severe emotional distress" and that "Defendant's actions created a

working environment that was toxic and hazardous to Plaintiff's health." Id. ¶¶ 49-50. Plaintiff states that "the working conditions were so egregious that she could not reasonably be expected to continue employment." Id. ¶ 48. On November 28, 2022, Plaintiff maintains that she was constructively discharged. Id. ¶ 47. Plaintiff filed an administrative charge with the Equal Employment Opportunity Commission ("EEOC") on March 15, 2023. (Doc. No. 13-1). On April 7, 2023, the EEOC issued Plaintiff a Notice of Right to Sue. (Doc. No. 10 ¶ 9).

Plaintiff's initial complaint was filed July 7, 2023. (Doc. No. 1). On September 26, 2023, Plaintiff filed an Amended Complaint which included: (1) Plaintiff's First Claim for Relief: Race Discrimination in violation of Title VII; (2) Plaintiff's Second Claim for Relief: Retaliation for Engaging in Protected Activity Under Title VII. (Doc. No. 10 ¶¶ 51-64). Defendant has moved to dismiss both claims of the Amended Complaint. (Doc. No. 12).

## II. DISCUSSION

### A. Standard of Review

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Id.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. Id. at 678-79. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. at 679; see also Anand v. Ocwen Loan Serv., LLC, 754 F.3d 195, 198 (4th Cir. 2014) (recognizing the court does not accept as true legal conclusions couched as a factual allegations). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). Although the pleading requirements stated in Rule 8 of the Federal Rules of Civil Procedure mark "a notable and generous departure from the hyper-technical, code-pleading regime of a prior era. . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79.

Second, to the extent there are well-pleaded factual allegations, the court assumes their truth and then determines whether they plausibly give rise to an entitlement to relief. Id. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)).

The sufficiency of the factual allegations aside, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." Neitzke v. Williams, 490 U.S. 319, 326 (1989). Indeed, where "it is clear that no relief could be granted under any set of facts that could be

prove[n] consistent with the allegations . . . a claim must be dismissed." Neitzke, 490 U.S. at 327 (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

### B. Failure to Exhaust Administrative Remedies for Title VII Claim

The Court will treat Defendant's arguments regarding Plaintiff's purported failure to exhaust administrative remedies as raised under Rule 12(b)(6). See Fort Bend Cnty., Texas v. Davis, 139 S. Ct. 1843 (2019); Stewart v. Iancu, 912 F.3d 693, 701-02 (4th Cir. 2019); Cunningham v. Wells Fargo N.A., No. 3:19-CV-00528-FDW, 2020 WL 5300843, at *5-6 (W.D.N.C. Sept. 4, 2020) (explaining that the Supreme Court has "held that Title VII's charge-filing requirement is not jurisdictional, but rather a claims-processing rule'" and as such "are analyzed under Rule 12(b)(6) rather than 12(b)(1)." (quoting EEOC v. 1618 Concepts, Inc., No. 19-CV-672, 2020 WL 87994, at *2 (M.D.N.C. Jan. 7, 2020))).

"It is well settled that before filing suit under Title VII. . . , a plaintiff must exhaust her administrative remedies by bringing a charge with the EEOC." Walton v. Harker, 33 F.4th 165, 172 (4th Cir. 2022); Harris v. Am. Airlines, Inc., No. 3:17-CV-00280-GCM, 2017 WL 2880400, at *1 (W.D.N.C. July 6, 2017). Title VII directs that a "charge. . . shall be filed" with the EEOC "by or on behalf of a person claiming to be aggrieved" within 180 days "after the alleged unlawful employment practice occur[s]." Fort Bend Cnty., 139 S. Ct. at 1846 (citing 42 U.S.C. § 2000e–5(b), (e)(1)). Whether or not the EEOC acts on the charge, a claimant receives a right-to-sue notice, and thereafter, a civil action can be brought within 90 days following such notice. Id. at 1847 (citing 42 U.S.C. § 2000e–5(f)(1)); Harris, 2017 WL 2880400, at *1. If the alleged unlawful employment practice is not reported to the EEOC within that timeframe, the claim will be barred. Walton, 33 F.4th at 174-75. Courts regularly dismiss Title VII claims when a plaintiff fails to exhaust administrative remedies before filing suit. Id.; Odom v. Brookfield Renewable, No. 1:20-

CV-00101-MR-WCM, 2021 WL 1015857, at *4 (W.D.N.C. Feb. 11, 2021), Mem. & R. Adopted, 2021 WL 982329 (W.D.N.C. Mar. 16, 2021) (dismissing Plaintiff's claims).

Plaintiff filed her EEOC charge on March 15, 2023. Defendant argues that any claims or events supporting such claims that took place prior to September 16, 2022, 180 days before the filling of the EEOC charge, are barred. (Doc. No. 13 at 5). In response, Plaintiff argues the applicability of the continuing violation doctrine. (Doc. No. 10 ¶ 13; Doc. No. 15 at 3). The continuing violation doctrine "allows for consideration of incidents that occurred outside the time bar when those incidents are part of a single, ongoing pattern of discrimination." Holland v. Wash. Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007) (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 118 (2002). The doctrine generally applies to hostile work environment and harassment claims, which are different in kind to claims of discrete acts of discrimination such as "termination, failure to promote, denial of transfer, or refusal to hire." See Morgan, 536 U.S. at 116 n.10; Perkins v. Int'l Paper Co., 936 F.3d 196, 209 n.5 (4th Cir. 2019).

Here, Plaintiff's claims, as alleged, are discrete acts of discrimination and, as such, the continuing violation doctrine is inapplicable. Courts "have declined to extend the limitations periods for discrete acts of discrimination merely because the plaintiff asserts that such discrete acts occurred as part of a policy of discrimination." Holland, 487 F.3d at 220 (quoting Williams v. Giant Food Inc., 370 F.3d 423, 429 (4th Cir. 2004)). Although race-based hostile work environment claims may give rise to application of the continuing violation doctrine, see Gilliam v. S.C. Dep't of Juvenile Justice, 474 F.3d 134, 139–42 (4th Cir. 2007), Plaintiff does not plead a race-based hostile work environment claim in her Complaint.

Plaintiff's response to the Motion to Dismiss attempts to assert a new hostile work environment claim and plead additional facts in support of this claim.[1] (Doc. No. 15). However, Plaintiff cannot supplement her claims or add new factual allegations through a response or opposition brief. See Mylan Labs., Inc. v. Akzo, N.V., 770 F. Supp. 1053, 1068 (D. Md. 1991), aff'd, 2 F.3d 56 (4th Cir. 1993); see also Zachair Ltd. v. Driggs, 965 F. Supp. 741, 748 n. 4 (D. Md. 1997), aff'd, 141 F.3d 1162 (4th Cir. 1998). Plaintiff has failed to properly bring those allegations before the Court because the allegations are outside of a complaint or an amended complaint. McNulty v. Commc'ns Workers of Am., No. 3:12CV-22-MOC-DSC, 2012 WL 1569601, at *3 (W.D.N.C. Mar. 16, 2012) ("Additional factual allegations contained in a response brief are not considered on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6)").

Defendant also persuasively argues that Plaintiff's EEOC Charge alleges discrimination based on race and retaliation, but makes no mention of a hostile work environment claim. (Doc. Nos. 16 at 2, 13-1). As a result, such a claim would be barred in any event.[2]

---

[1] Plaintiff alleged only two claims in her Complaint, one for race discrimination and one for retaliation. (Doc. No. 10 ¶¶ 51-64).

[2] Plaintiff's Complaint has a passing reference to "a working environment that was toxic and hazardous to Plaintiff's health," (Doc. No. 10 ¶ 50), but makes no specific mention of the phrase "hostile work environment." Even if Plaintiff had referred to a hostile work environment claim in her Amended Complaint, the Court still finds that Plaintiff failed to allege sufficient facts to state such a claim. To state a hostile work environment claim, a plaintiff must allege that the harassment was (1) unwelcome, (2) based on race, (3) sufficiently severe or pervasive to alter the terms and conditions of employment and create an abusive atmosphere, and (4) imputable to the employer. Squitieri v. Piedmont Airlines, Inc., No. 3:17-CV-441, 2018 U.S. Dist. LEXIS 25485, at *5 (W.D.N.C. Feb. 16, 2018) (citing Mosby-Grant v. City of Hagerstown, 630 F.3d 326, 334 (4th Cir. 2010) (Title VII)). Plaintiff neither alleges that any conduct was "unwelcome" nor "sufficiently severe or pervasive to alter the terms and conditions of employment and create an abusive atmosphere." Id.

Applying these principles to the facts alleged in the Amended Complaint, the Court may only consider acts that occurred on or after September 16, 2022. Alleged unlawful employment practices outside of that 180-period are barred. The Complaint contains some allegations that appear to be on or after September 16, 2022, and as a result, the undersigned turns now to an analysis of Plaintiff's remaining claims.

**C. Race Discrimination Claim in Violation of Title VII**

To plausibly state a claim for race discrimination under Title VII, Plaintiff must plausibly allege facts to support the following elements: (1) she is a member of a protected class; (2) she satisfactorily performed her job; (3) she faced an adverse employment action; and (4) the circumstances surrounding the adverse action give rise to an inference of unlawful discrimination. Swaso v. Onslow Cnty. Bd. Of Educ., 698 Fed. App'x 745, 747 (4th Cir. 2017). "An adverse action is one that 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" Hoyle v. Freightliner, LLC, 650 F.3d 321, 337 (4th Cir. 2011) (quoting Ellerth, 524 U.S. 742, 761 (1998)). In addition, a plaintiff "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006).

Plaintiff plausibly asserts that she is a member of a protected class and that she "performed satisfactorily throughout her tenure." (Doc. No. 10 ¶¶ 5, 14, 52). As part of her discrimination claim, Plaintiff points to a failure to promote, discipline by coaching, training, and negative reviews, and constructive discharge. Id. ¶¶ 33, 35-42, 47, 51-56. However, the Court concludes that, as alleged, her claim falls short.

1. *Failure to Promote*

Plaintiff states that Defendant "failed to promote her based on her race." Id. at ¶ 53. Failure to promote can constitute adverse employment action, but a plaintiff must include facts to support such a claim. Hoyle, 650 F.3d at 337 (quoting Ellerth, 524 U.S. at 761). To plausibly state a failure to promote claim under Title VII, Plaintiff must allege facts to support the following elements: "(1) she is a member of a protected group, (2) there was a specific position for which she applied, (3) she was qualified for that position, and (4) [Defendant] rejected her application under circumstances that give rise to an inference of discrimination." Williams, 370 F.3d at 430; Walton, 33 F. 4th at 176. "Because failure to promote is a discrete act of discrimination the continuing violation doctrine does not apply [to a failure to promote claim]." Williams, 370 F.3d at 429 (internal citations omitted); Gilliam, 474 F.3d 141 n.8; Ivery v. N. Carolina Ass'n of Educators, Inc., No. 2:22-CV-43-M, 2023 WL 6780342, at *5 (E.D.N.C. July 21, 2023), R. & R. adopted, 2023 WL 5828593 (E.D.N.C. Sept. 8, 2023).

In the Amended Complaint, Plaintiff claims to have applied for hundreds of jobs throughout her tenure with Defendant, but specifically names only two positions for which she applied: The Testing Tools and Validation position in 2019 and the Lending Manager position in 2021. (Doc. No. 10 ¶¶ 22-27). These allegations took place before September 16, 2022, and are outside of the timeframe that can be considered. Id. ¶¶ 22, 27. Turning to potential post-September 2022 conduct, Plaintiff states that she "applied for hundreds of positions that she was qualified for, but she was always overlooked due to her race and the fact that she had complained about discrimination." Id. at ¶ 54. Plaintiff does not specify what these positions were or how she was qualified for them. Plaintiff also does not allege facts that Defendant rejected her applications

under circumstances that give rise to an inference of discrimination beyond conclusory statements. As a result, Plaintiff has not sufficiently stated a claim for failure to promote.

   2. *Discipline by Coaching, Training, and Negative Reviews*

Simply receiving a negative performance evaluation or being placed on a performance improvement plan is not generally an adverse action. See Pulley v. KPMG Consulting, Inc., 348 F. Supp. 2d 388, 395 (D. Md. 2004), aff'd, 183 F. App'x 387 (4th Cir. 2006) ("A performance review which has no effect on Plaintiff's compensation or promotion cannot be considered an adverse employment action. Similarly, placement in a [performance improvement plan] 'simply does not amount to a redressable adverse employment action.'" (quoting Jeffers v. Thompson, 264 F. Supp. 2d 314, 329 (D. Md. 2003))); Peterson v. Cap. One, N.A., No. CV 22-1759-BAH, 2023 WL 8529123, at *5 (D. Md. Dec. 7, 2023) (finding that being subjected to "coaching" is not adverse employment action); see also Thorn v. Sebelius, 766 F. Supp. 2d 585, 598 (D. Md. 2011), aff'd, 465 F. App'x 274 (4th Cir. 2012); Fierce v. Burwell, 101 F. Supp. 3d 543, 552 (D. Md. 2015) (finding plaintiff's claims fail because interference with receipt of an award, counseling, and refusal to permit attendance at certain meetings and training sessions did not constitute an action that adversely affected the terms and conditions of employment) (citations omitted). Poor performance evaluations are actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment. James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 377 (4th Cir. 2004).

Plaintiff asserts that she was disciplined through "coaching by management" which she claims "impacted her ability to be promoted." (Doc. No. 10 ¶ 33).[3] No further facts are alleged

---

[3] It is not entirely clear that alleged discipline occurred after September 2022 as there is not a specific date alleged. There are some proceeding paragraphs in Plaintiff's Complaint that

as to how the coaching hindered Plaintiff's ability to be promoted or otherwise impacted the terms or conditions of her employment. Plaintiff also generally asserts that her work was more strictly scrutinized by Defendant, which led to poor performance reviews and additional training negatively impacting her ability to be promoted. Id. at ¶¶ 36-58. Once again, Plaintiff does not offer facts as to how the reviews or additional training precluded her from being promoted or otherwise impacted the terms or conditions of her employment. Plaintiff alleges she was "verbally abused" but provides no further facts or incidents demonstrating the verbal abuse other than the conclusory statement that it occurred. Id. at ¶ 49. Thus, Plaintiff has failed to allege facts that support beyond a speculative level that the alleged discipline by coaching, training, or negative reviews constitute an adverse employment action.

   3.   *Constructive Discharge*

Constructive discharge may constitute an adverse employment action in certain circumstances. Lacasse v. Didlake, Inc., 712 F. App'x 231, 239 (4th Cir. 2018). A plaintiff must show that: (1) her working conditions became so intolerable that a reasonable person in the employee's position would have felt compelled to resign; and (2) that she actually resigned because of those conditions. Perkins, 936 F.3d at 211–12 (quoting Green v. Brennan, 578 U.S. 547, 555, (2016)). "Critically, difficult or unpleasant working conditions and denial of management positions, without more, are not so intolerable as to compel a reasonable person to resign." Id. For example, "being yelled at, told you are a poor manager, required to work with an injured back and chastised in front of customers is not so intolerable as to compel a reasonable person to resign." Id. (citing Williams, 370 F.3d at 430).

---

reference between April 2022 and October 2022, and an allegation as to constructive discharge in November 2022. (Doc. No. 10 ¶¶ 28, 47).

Likewise, "co-worker ostracism, denial of a management position and mandatory counseling for turning in an inaccurate time card" are not sufficient. Id. (citing Matvia v. Bald Head Island Mgmt., Inc., 259 F.3d 261, 273 (4th Cir. 2001)). "[B]eing ignored by co-workers and top management," or "dissatisfaction with work assignments, perceived unfair criticism and difficult and unpleasant working conditions" are generally insufficient to establish constructive discharge. Id. (citing Munday v. Waste Mgmt. of N. Am., Inc. 126 F.3d 239, 244 (4th Cir. 1997); Carter v. Ball, 33 F.3d 450, 459 (4th Cir. 1994)).

Plaintiff maintains that she was "constructively discharged" on November 28, 2022. (Doc. No. 10 ¶ 47). Plaintiff states that "the working conditions were so egregious that she could not reasonably be expected to continue employment" and that "Defendant's actions created a working environment that was toxic and hazardous to Plaintiff's health." Id. at 48, 50. Plaintiff's support for these assertions is the alleged incidents of failure to promote, coaching by management, strict scrutiny of her work, and verbal abuse which have been discussed above. None of these incidents, or any other facts or incidents as alleged in the Complaint, rise to the level of indicating work conditions so intolerable that a reasonable person would have no choice but to resign. Thus, Plaintiff has failed to allege facts sufficient to state a claim.

Considering all of this, the undersigned respectfully recommends that Plaintiff's First Claim for Relief: Race Discrimination in violation of Title VII be dismissed.

### D. Retaliation Claim

Plaintiff's response brief did not substantively address Defendant's Motion as to her retaliation claim, and the only passing reference to retaliation is the following: "Plaintiff has pledged objective evidence that she was qualified for the promotions and that the decisions were made on discriminatory grounds, retaliation, or in violation of company policies." (Doc. No. 15

at 5).  "The Fourth Circuit has made clear that a party waives an argument . . . by failing to develop its argument—even if its brief takes a passing shot at the issue." Bigelow Corp. v. Hounds Town USA, LLC, No. 323CV00134-FDW-SCR, 2023 WL 4939386, at *3 (W.D.N.C. Aug. 2, 2023) (quoting Grayson O Co. v. Agadir Int'l LLC, 856 F.3d 307, 316 (4th Cir. 2017)).

> Overburdened trial judges cannot be expected to be mind readers. . . . In opposing a Rule 12(b)(6) motion, a plaintiff cannot expect a trial court to do his homework for him. Rather, the plaintiff has an affirmative responsibility to put his best foot forward in an effort to present some legal theory that will support his claim.

Id. at *3 (quoting McCoy v. Mass. Inst. of Tech., 950 F.2d 13, 22–23 (1st Cir. 1991)) (internal citations omitted).  Where a party fails to do so, "[n]o amount of interpretive liberality can save chestnuts so poorly protected from the hot fire of dismissal." Id. (quoting McCoy, 950 F.2d at 23).  Courts routinely treat a defendant's argument as uncontested when a plaintiff fails to respond to that argument. City of Brevard v. CDM Smith, Inc., No. 1:20-cv-160-MR-WCM, 2021 WL 1015858, at *6 (W.D.N.C. Feb. 2, 2021) (collecting cases holding that when a plaintiff's failure to respond to a motion to dismiss argument, courts may assume they concede the merits of that argument).

"However, even where a motion to dismiss goes unchallenged, 'the district court nevertheless has an obligation to review the motions to ensure that dismissal is proper.'" Bigelow Corp., 2023 WL 4939386, at *4 (quoting Stevenson v. City of Seat Pleasant, 743 F.3d 411, 416 n.3 (4th Cir. 2014)).

For a claim of retaliation, Plaintiff must plead facts to support that (1) that she was engaged in protected activity; (2) the employer took an adverse action against her; and (3) there is a causal connection between the protected activity and the adverse action. Hoyle, 650 F.3d at 337; Ziskie v. Mineta, 547 F.3d 220, 229 (4th Cir. 2008); Davenport v. Manual Woodworkers & Weavers, Inc., No. 1:21-CV-00262-MR-WCM, 2023 WL 3063384, at *6 (W.D.N.C. Apr. 24, 2023).

Plaintiff sufficiently alleges that she was engaging in a protected activity by complaining about racial discrimination. (Doc. No. 10 ¶ 45, 61); Holland, 487 F.3d at 218. However, as analyzed above, Plaintiff fails to allege facts giving rise to an adverse action. See also Strother v. City of Laurel, 895 F. 3d 317, 327 n. 3 (4th Cir. 2018). In addition, a failure to investigate a complaint of discrimination does not constitute an adverse action. Westmoreland v. Prince George's Cnty., Md., 876 F. Supp. 2d 594, 605 (D. Md. 2012) (citing Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 721 (2d Cir.2010)); Coon v. Rex Hosp., Inc., No. 5:20-CV-00652-M, 2021 WL 3620282, at *4 (E.D.N.C. Aug. 16, 2021). Plaintiff also fails to allege a causal connection between such protected activity and a purported adverse action. Accordingly, the undersigned finds that Plaintiff has failed to plead facts plausibly stating a claim of retaliation under Title VII, and respectfully recommends that Plaintiff's Second Claim for Relief: Retaliation for Engaging in Protected Activity Under Title VII be dismissed.

### III.  RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that "Defendant's Motion to Dismiss" (Doc. No. 12) be **GRANTED**, and that Plaintiff's claims be **DISMISSED.**

### IV.  TIME FOR OBJECTIONS

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely

objections will preclude the parties from raising such objections on appeal. Id. "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

The Clerk is directed to send copies of this Memorandum and Recommendation to the parties' counsel and to the Honorable Kenneth D. Bell.

**SO RECOMMENDED.**

Signed: May 21, 2024

_____
Susan C. Rodriguez
United States Magistrate Judge